MICA INSULATOR CO. v. COMMERCIAL MICA CO.

(Circuit Court of Appeals, Seventh Circuit.    October 6, 1908.)

No. 1,457.

**1.** PATENTS (§ 175*)—CONSTRUCTION—INTENTION OF INVENTOR.

A patent for a process of making mica insulating sheets by combining "laminated elementary scales" of mica should not be construed to require that the scales must be split down to the last possibility of splitting, but only so far as is commercially practicable, especially where it is plain, from the description of the process in the specification, that such was the inventor's meaning.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250, 250½; Dec. Dig. § 175.*]

**2.** PATENTS (§ 86*)—PROCESS—VALIDITY—ABANDONMENT OF APPLICATION FOR PRODUCT PATENT.

The abandonment of an application for a product patent, on a finding of an examiner in interference proceedings that the product had been in use for more than two years prior to the application, is not a conclusive admission that the process for the manufacture of such product for which the applicant had been granted a patent on an application filed at the same time, was old, nor does it estop the patentee from asserting the validity of such patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 111; Dec. Dig. § 86.*

Abandonment of invention, see note to Hayes-Young Tie Plate Co. v. St. Louis Transit Co., 70 C. C. A. 6.]

**3.** PATENTS (§ 328*)—VALIDITY—INFRINGEMENT—PROCESS FOR MAKING MICA SHEETS.

The Dyer patent, No. 483,646, for a process of making artificial mica sheets for electrical insulation, by uniting a series of layers of irregularly shaped mica scales, laid to overlap, by means of varnish and under pressure until the desired thickness is obtained, was not anticipated, and discloses invention; also *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 157 Fed. 90.

The bill in the Circuit Court was to restrain infringement of Letters Patent No. 483,646, issued October 4, 1892, to Arthur H. S. Dyer, for a certain new and useful improvement in the process of making artificial mica sheets for electrical insulation. The pertinent portion of the description in the patent is as follows:

Heretofore it has been proposed and common to construct insulating-plates of pulverized mica mixed with a hardening-cement, the same being further sometimes modified by being reinforced by coarse fabrics or mechanically or chemically combined with other substances, such as pulverized talc, silica, and similar pulverized electrical insulating substances. Plates formed in this manner are much more imperfect as to durability and efficiency and more costly and difficult of manipulation than the sheets formed by my process.

In order to understand the object of my invention, it may be stated that in the construction of electrical apparatus—such, for example, as armatures and field-magnets of dynamos and commutators—it is at present customary to

place natural plates of mica for the purpose of insulating the elements of the apparatus between which the said plates are placed.

The natural plate of mica is very costly, especially when large. It is easily broken when handled or bent, cracks at the edges when cut or trimmed, and is accompanied by many other difficulties well known to electrical manufacturers. These difficulties are removed by the process of my invention. When natural plates are employed, spaces exist between the laminæ and are apt to contain conducting liquids, such as moisture. This is another important defect overcome by my invention. It is difficult to find natural mica plates of uniform thickness, rendering it unfit for use in separating commutator-sections.

A very important outcome of my invention is that I can form artificial plates superior to the natural by means of small scales formed from very small or "waste" mica.

Briefly described, my invention involves the combination of laminated elementary scales of mica of any given sizes and shapes, fastened together irregularly by an insulating-cement under pressure, and elementary scales of larger size similarly fastened to the sheet upon one or both sides or in the middle as a core.

The claim sued upon is as follows:

1. The method of manufacturing electrical insulating mica sheets, the same consisting in varnishing a large sheet of iron or similar foundation-plate and placing thereon a series of smaller mica scales with their edges overlapping each other, varnishing the layer of scales and applying a second series of smaller sheets with their edges overlapping, continuing in the same manner until a plate of the required thickness is formed, heating the sheet to partially evaporate the solvent of the varnish, rolling the same to remove the excess of the varnish, subjecting the sheet to a heavy pressure, and finally cooling it, as hereinbefore described.

The Circuit Court dismissed the bill for want of equity. Further facts are stated in the opinion.

Charles A. Brown and William H. Kenyon, for appellant.
William R. Rummler, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). The patent in suit has been sustained in the Third Circuit. Mica Insulator Co. v. Union Mica Co. (C. C.) 137 Fed. 928.

One matter not called to the attention of the court in that case was, that at the time that the process patent in this suit was applied for a product patent was, also, applied for; which application for a product patent, after the process patent had been issued, came into interference, in the course of which an examiner in the Patent Office reported as his finding, that the mica board had been in previous use, especially in England; whereupon the application for the product patent (the applicant being the patentee in the process patent) was abandoned.

This fact was held by the court below to differentiate the case in the Third Circuit from the case here—the court below holding that by thus abandoning his application for a product patent, the patentee admitted that the product of his process had been in use for more than two years prior to the date of the application for the process patent. The court below was also of the opinion that the mica scales used in the process of making appellee's mica board were not the "laminated elementary scales," described in the patent.

It is our judgment that the court below was in error upon both of these propositions. Before the patent in suit, mica board had been made, and was in great demand, in connection with electrical appliances —one process being to grind up the mica, and mix it with a cement, afterwards molding it into proper boards; and another to take the mica as it came from the mines, and cutting it into rectangular shapes, build up the board by means of layers overlapping each other, as bricks in a wall are laid up, the cement being in the nature of the mortar.

But the specific process set forth in the patent—taking the mica in the irregular form in which it comes from the mines, splitting it into the thinnest practicable sheets, and then building up the boards by means of cement—does not seem to have been thought of. The evidence satisfies us that before the micaite of the patent in suit, there was no such mica board. And the evidence satisfies us, also, that this new mica board is a commercial success, wholly because it has given to the world of electrical appliances a material that it did not previously possess.

True the patent describes the scales of mica to be used as "laminated elementary scales"; and from this it is argued, that to be within the patent, the alleged infringing mica board must employ mica scales split down to the last possibility of splitting, such as is most nearly approximated in India—a treatment of the mica that neither the appellant or appellee in actual practice follows; wherefore, the argument runs, the mica board of the appellee, however similar to the mica board made by appellant, is not an infringement of appellant's patent.

This argument, it seems to us, is putting on words, as mere words, distinctions that, practically applied, are altogether too fine. "Laminated elementary scales" do not necessarily mean the "ultimate" scale, as nature has made mica; but the elemental scale into which mica as it is mined can, considering the elements of time and cost, be practically resolved. And this seems to have been the thought of the patentee; for in the descriptive portion of the patent is this clause:

"By the term 'scale' I mean that which is understood by that term as used in mineralogy, it being the thinnest sheet of mica which can be practically obtained by the continued process of cleavage."

Certainly one who has contributed to the success of electrical appliances an idea so distinctive and helpful as the mica board in the patent in suit is not to be defeated by a reading of the patent that was not intended. True in India, where labor is cheap, and the time employed upon a given task is of little commercial consequence, a result mechanically can be reached that resolves the mica, as mined, into minuter scales. But it was the resolution of mica into its elemental scales, in practice, the difference being one of degree only (the mica board in the one case answering the purpose, commercially, of the other), that the patentee had in mind—the descriptive words of the patent to be taken, not so much in the light of what could be done if time and cost were of no consequence, as of what must be done to make the board what the electrical world asks for, time and cost being of the greatest practical consequence.

Nor do we think that by the abandonment of appellant's application for a product patent, upon the finding of an examiner in interference proceedings, that the product had been in use, especially in England, more than two years previous to the application, appellant either conclusively admits that the process is old, or is estopped from denying that the process is old. Clearly the action of the patentee, in not further prosecuting his application for a product patent, is not an abandonment, within the meaning of the law, of his process patent; for the process patent was not obtained upon any consideration, either express or implied, that he would drop the product patent. And it is easily conceivable that, without surrendering any thought that his process patent was rightfully issued, the patentee, for reasons of his own, such as the expensiveness of a further prosecution of his product patent, might drop the product patent just where the examiner left it. None of the considerations that enter into estoppel affect this case.

As a mere admission, having evidential value only, the conduct of the patentee in thus abandoning his prosecution of the product patent might, under certain circumstances, be of more or less weight. But the circumstance brought to our attention must not, as an admission, be carried farther than it ought to go. Were there a sharp issue presented in this case as to whether mica board, such as that described in the patent, had been in prior use or not, for the period named — upon which issue the evidence pro and con was nicely balanced—the circumstance stated might have determinative weight. But though such an issue is formally in the case, there is no evidence pro and con, nicely balanced—no real contest based on evidence pro and con around that issue—and therefore the circumstance, as an admission, is negligible. In the face of the clear proof disclosed in the evidence, this single circumstance can rightfully have no effect upon our judgment.

On the whole case, we hold that the decree of the Circuit Court must be reversed, with instructions to enter a decree granting the injunction as prayed for.